## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FAIRFAX COUNTY, VIRGINIA, *et al.*,

        Plaintiffs,

        v.

BANK OF AMERICA N.A.,

        Defendant.

Civil Case No. 08-0433 (JR)

## CITY OF OAKLAND'S REPLY TO PLAINTIFFS' OPPOSITION TO RELIEF REQUESTED IN MOTION OF CITY OF OAKLAND FOR LIMITED PURPOSE INTERVENTION

### I.      INTRODUCTION

In its Motion to Intervene for the Limited Purpose of Responding to Plaintiffs' Motion for the Appointment of Interim Co-Lead Counsel,[1] the City of Oakland ("Oakland") made the modest request that the Court follow sound, well-established case management procedures and hold the Motion in abeyance until the Judicial Panel on Multidistrict Litigation ("Panel") rules on the pending motion for consolidation and transfer. The Panel heard the motion on May 29, 2008, and a ruling is expected within three weeks. If the Panel transfers the action to this Court, Fairfax County and its co-plaintiffs (collectively "Fairfax County") may re-notice the Motion.

---

[1] The Motion for the Appointment of Interim Co-Lead Counsel is referred to hereafter as the "Motion."

Fairfax County mischaracterizes Oakland's request and provides no rationale for addressing lead counsel applications before the Panel rules. First, the appointment of lead counsel is not necessary right now. Fairfax County misconstrues the nature of relief that Oakland seeks in contending that there is no authority for waiting until the Panel rules on Fairfax County's transfer motion. Contrary to Fairfax County's assertion, however, Oakland is not seeking a stay. In fact, Oakland merely requests that this Court hold a single premature Motion – the Motion for the Appointment of Interim Co-Lead Counsel – in abeyance until the Panel rules on Fairfax County's transfer motion. The hearing on that Motion is today, May 29, 2008.

Second, Fairfax County asserts, without any factual support, that Oakland's request will delay or derail undescribed settlement negotiations with one of the defendants. The fact that Fairfax County has had some discussions already mitigates its concern that it needs a formal title to continue those discussions. Notably, Fairfax County does not say that a settlement is close, or attempt to show that there are exigent circumstances requiring the immediate appointment of counsel before the Panel rules on the motions to consolidate and transfer. Its vague claim that settlement negotiations have occurred sometime in the past provides no support for Fairfax County's opposition to Oakland's request. Ultimately, Fairfax County appears to suggest that the Court should appoint interim co-lead counsel on the basis of its own investigation of bid-rigging in the municipal derivatives industry without knowing anything about Oakland's investigation.

Finally, Fairfax County's motion is inefficient. Fairfax County's counsel does not show that a delay in considering appointing them for lead counsel before all parties are before the same Court would adversely affect them. Instead, Oakland seeks only to ensure that, at the proper time, it can be heard on any interim lead counsel motion, and that the Court and the

parties can avoid any unnecessary and inefficient motion practice prior to transfer and consolidation.

## II.    ARGUMENT

### A.    Appointment Of Co-Lead Counsel Is Not Necessary At This Time

Fairfax County makes no showing that the purposes of Rule 23(g) are served by rushing an interim lead counsel selection. Fairfax County cites no authority for the proposition that an unsuccessful period of mediation justifies the appointment of interim lead counsel immediately upon filing of an overlapping class action by another plaintiff in another judicial district. The Advisory Committee's Notes to Rule 23(g), cited in part by Fairfax County in its Memorandum in support of its Motion (Dkt. No. 45 at 3), in fact support the relief sought by Oakland:

> In some cases, it may be appropriate for the court to allow a reasonable period after commencement of the action for filing applications to serve as class counsel. *The primary ground for deferring appointment would be that there is reason to anticipate competing applications to serve as class counsel. Examples might include instances in which more than one class action has been filed* . . . .

Adv. Committee Notes to Fed. R. Civ. P. 23(g)(2)(A) (emphasis added). Such is the case here.

There is no urgent need to appoint interim class counsel here. Notwithstanding its references to settlement *efforts*, Fairfax County's case is in its earliest preliminary stages. Although Fairfax County adverts that settlement negotiations with Bank of America ("BOA") have been protracted, it does not state that a settlement has been reached or that one may be imminent. This is not surprising. Among other things, the Department of Justice's ("DOJ") grant of leniency to Bank of America is subject to conditions, many of which may have not been satisfied and appear unlikely to be satisfied in the near term. Under its Corporate Leniency Policy, the DOJ must determine that six separate conditions have been met, including the

company's providing "full, continuing, and complete cooperation," as a corporation and not through isolated individuals.[2]  As Bank of America has stated in its regulatory filings, it is not yet free from potential criminal liability; its amnesty is "subject to the Corporation's continuing cooperation."  Exhibit A to Declaration of Eric B. Fastiff ("Fastiff Decl.") (Bank of America Form 10-K, dated February 28, 2008), at 123.  BOA is apparently not yet in a position to settle this or any other civil action, and the fact that some negotiations may have commenced, but are not complete, should not preclude Oakland's very modest and limited request.

Fairfax County's unspecific references to unsuccessful settlement discussions do not change the fact that its case, like the four others pending before the Panel, is at its outset. BOA has not answered or responded to Fairfax County's or any other complaint.  No discovery has been propounded.  Fairfax County's own proposed order submitted with the Motion contemplates that this case will be lengthy, giving interim class counsel responsibility for all aspects of the case, from inception through post-trial proceedings.  *See* Dkt No. 5-2 at 2-3 (listing 14 duties, including supervising all pretrial, trial, and post-trial proceedings, and employing and consulting with experts).

In addition, the brief period of abeyance proposed by Oakland would not affect any ongoing proceedings beyond Fairfax County's Rule 23(g) Motion, and would be in accord with agreements reached in this and the other cases before the Panel to extend all Defendants' deadlines to answer or respond to the complaints, *see* Oakland Mem. Supp. Mot., at 4, and it

---

[2] *See* Department of Justice, Corporate Leniency Policy, at
http://www.usdoj.gov/atr/public/guidelines/0091.htm, accessed May 21, 2008 (Exh. B to Fastiff Decl.).

would be in accord with the teachings of the *Manual for Complex Litigation* and the Advisory

Committee Notes to the Federal Rules of Civil Procedure. *See* Oakland Mem. Supp. Mot., at 5.[3]

      **B.**    **Scheduling Motions For Appointment Of Lead Counsel After The Panel<br>           Rules Will Not Cause Delay.**

      Fairfax County exaggerates the nature of the relief that Oakland wants. Oakland

is not seeking to delay the proceedings, just to have the Court not rule right now on the Rule

23(g) Motion. Contrary to Fairfax County's contentions, Oakland has not proposed lengthening

the pretrial schedule. Instead simply has requested that the Court hold the Rule 23(g) Motion in

abeyance until after the Panel has ruled on the consolidation and transfer motion. *See* Oakland

Mem. Supp. Mot., at 1-2. Assuming the Panel decides to consolidate and transfer these actions,

they can proceed quickly. As the Panel's rules provide, transfer "is effective when the transfer or

remand order is filed in the office of the clerk of the district court of the transferee district."

J.P.M.L. Rule 1.5.

      Particularly in the absence of any demonstrable urgent need to address the issue

of interim lead counsel now, Fairfax County's references to the Panel's rules on tag-along

actions and contested transfer orders as potential sources of delay are misplaced. It is standard

practice that lead counsel applications are addressed after consolidation and transfer, not the

other way around. Once the Panel consolidates and transfers the five actions, all filed by

sophisticated municipal entity plaintiffs, and all known to defendants and the Panel, they will

proceed in the transferee forum. Future filings by other plaintiffs will be treated as tag-along

---

[3] The Panel's two transfer orders that Fairfax County cited, at 7, have no bearing on the relief
sought by Oakland. In neither case did the Panel address whether interim lead counsel motions
should be held in abeyance, let alone whether proceedings should be stayed pending the Panel's
decision on transfer. Instead, it noted which forum had the furthest progressed action, a factor
that will be, at best, neutral here. *See In re Metroprolol Succinate Patent Litig.*, 329 F. Supp. 2d
1368, 1370 (J.P.M.L. 2004); and *In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354
(J.P.M.L. 2004).

cases pursuant to the Panel rules.  The prospect of substantial delay stemming from the transfer

of tag-along actions or contested transfer orders is extremely small.  The transferee Court will be

able to act on a Rule 23(g) motion shortly after the Panel determination.[4]  For now, it makes

sense that all parties who have cases on file have an opportunity to be heard once the Panel rules.

        The short period of time that may elapse before the Panel can rule is hardly

"indefinite," as Fairfax County contends, and stands in stark contrast to the cases Fairfax County

cites in which courts have ruled that proceedings should continue while a motion to transfer is

pending.  *See, e.g.*, *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002)

(denying stay pending arbitration, which court indicated could take "years").  The other cases

Fairfax County cites, at 6, in which a court chose to stay proceedings during the pendency of a

motion before the Panel did not involve lead counsel applications, but largely involved motions

for remand.  Remand motions raise threshold questions of jurisdiction and questions of state law

peculiar to the transferor forum and are thus best addressed by the transferor court.  *See, e.g.,*

*Ariail Drug Co., Inc. v. Recomm Intern. Display, Inc.*, 122 F.3d 930, 931-32 (11th Cir. 1997)

(finding no jurisdiction to review remand to state court); *Havens Protected "C" Clamps, Inc. v.*

*Pilkington PLC*, 2000 WL 382027 (D. Kan. Mar. 28, 2000) (finding that "resolution of the

motion to remand does not necessarily implicate issues common to the other actions currently

pending before the MDL Panel-designated court"); *Bellinder v. Microsoft Corp.*, 2000 WL

575021 (D. Kan. Mar. 24, 2000) ("No great judicial economy will be realized" from delaying

ruling on remand motion); *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp.

1186, 1188-89 (N.D. Cal. 1997) ("The appropriate forum, moreover, is a threshold issue to class

---

[4] There is tension, to say the least, between Fairfax County's protestations of delay caused by
Oakland's asking to be heard and the nearly two months that lapsed between the filing of Fairfax
County's Rule 23(g) Motion and the filing of its memorandum in support.

certification and defendant's petition to the Panel does not affect scheduled pretrial proceedings."). In Fairfax County's final case, *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 120 n.2 (2d Cir. 2006), defendants opposed transfer, unlike Bank of America here. None of these cases support Fairfax County's request for the urgent appointment of lead counsel.

C.    **Fairfax County's Motion Is Inefficient**

Fairfax County's Motion risks wasting this Court's and the parties' resources. While Fairfax County hypothesizes a series of never ending delays, it ignores reality. While it is possible the Panel will transfer the cases to this Court, it is unlikely. As noted in multiple filings with the Panel, there is little, if any, connection of these actions to the District of Columbia. In contrast to the other potential transferee courts, neither any Plaintiff nor any Defendant resides in this District and the wrongful acts are not alleged to have occurred here. Indeed, as a result, the other plaintiffs (Oakland and Haywood County, Tennessee) have advocated for other transferee courts. Three dozen defendants, excluding Bank of America, seek consolidation and transfer in another court. Should the Panel transfer these cases elsewhere, nothing will have been gained by this Court's entertaining Fairfax County's Rule 23(g) motion now. The time and resources of the parties will have been squandered as the transferee judge entertains a second round of Rule 23(g) motions.

In moving for consolidation, Fairfax County recognized that the purpose of transfer and consolidation pursuant to 14 U.S.C. § 1407 is to avoid precisely this situation. In its memorandum in support of its § 1407 motion, Fairfax County correctly stated that consolidation will

> promote efficiency by sparing the judiciary, the parties, and witnesses the burden of expending valuable time and resources conducting duplicative discovery and resolving common questions of fact. Furthermore, consolidation of the actions in a single district is also in the interest of justice because it will prevent the

-7-

> possibility of multiple inconsistent rulings on the common factual
> and legal issues in the related cases.

Exh. C. to Fastiff Decl., at 6. Consolidation does so by bringing all parties to one court so that all matters can be resolved with all parties present.

Fairfax County, having moved for consolidation and transfer to gain the benefits of such efficiencies, should not be allowed to undercut those benefits by rushing to ask the Court to appoint its counsel interim lead counsel before the Panel decides the transfer motion. Fairfax County's decision to seek transfer and consolidation distinguishes this case from examples it offered of lead counsel being appointed while Panel motions are pending. In *In re Duke Energy Corp. Securities Litigation*, 2002 WL 1933798 (S.D.N.Y. Aug. 30, 2002), a securities case where 13 actions had already been consolidated before the Court, the Court proceeded with the lead counsel appointment process because *defendants'* pending motion to the Panel was "an obvious delaying tactic." *Id.*, at *1. There is no indication here that the Panel proceeding was initiated to delay these actions. Indeed Fairfax County initiated them itself. The other case, *Albert Fadem Trust v. Worldcom, Inc.*, 2002 WL 1485257 (S.D.N.Y. July 12, 2002), is distinguishable. That case was brought under the PLSRA, which has its own particular procedures, including a statutory time limit for filing lead counsel applications. Unlike here, one party there moved for a stay of approximately 35 actions already filed in one district. Here on the other hand, sound principles of judicial efficiency and economy, together with well-developed ordinary practice, teach that lead counsel appointment and other case management decisions should await the Panel's decision.

## III.   CONCLUSION

For the foregoing reasons, Oakland requests that the Rule 23(g) Motion be held in abeyance until the Panel has ruled on the pending MDL motion for transfer and consolidation.

Oakland reserves the right to respond in substance to the Rule 23(g) Motion if the Panel transfers

the pending cases to this Court and Fairfax County subsequently re-notices its Motion.  In the

alternative, if the Court wishes to proceed with the Rule 23(g) Motion now, Oakland requests the

Court set a briefing schedule so that it may respond to the Motion on the merits and to put before

the Court its counsels' credentials to support their appointment as interim lead counsel.


Dated: May 29, 2008                 Respectfully submitted,

                                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                    By:____/s/ *Eric B. Fastiff*_____
                                         Eric B. Fastiff (D.C. Bar No. 453854)

                                    Richard M. Heimann
                                    *rheimann@lchb.com*
                                    Joseph R. Saveri
                                    *jsaveri@lchb.com*
                                    Eric B. Fastiff (D.C. Bar No. 453854)
                                    *efastiff@lchb.com*
                                    275 Battery Street, 30th Floor
                                    San Francisco, CA  94111-3339
                                    Telephone:     (415) 956-1000
                                    Facsimile:     (415) 956-1008

                                    John A. Russo, City Attorney
                                    *jrusso@oaklandcityattorney.org*
                                    Barbara Parker, Chief Asst. City Attorney
                                    *bparker@oaklandcityattorney.org*
                                    Mark Morodomi, Supervising Deputy City Attorney
                                    *mmorodomi@oaklandcityattorney.org*
                                    Kathleen Salem-Boyd, Deputy City Attorney
                                    *ksalemboyd@oaklandcityattorney.org*
                                    CITY OF OAKLAND
                                    One Frank H. Ogawa Plaza, 6th Floor
                                    Oakland, CA  94612
                                    Telephone:     (510) 238-3034
                                    Facsimile:     (510) 238-6500

James A. Quadra
*quadra@meqlaw.com*
Sylvia Sokol
*sokol@meqlaw.com*
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street
Mills Tower, Suite 2100
San Francisco, CA  94104
Telephone:     (415) 362-3599
Facsimile:     (415) 362-2006

Steven E. Fineman
*sfineman@lchb.com*
Daniel E. Seltz
*dseltz@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017
Telephone:     (212) 355-9500
Facsimile:     (212) 355-9592

*Attorneys for Intervenor*
*City of Oakland, California*

763839.8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FAIRFAX COUNTY, VIRGINIA, *et al.*,

              Plaintiffs,

       v.

BANK OF AMERICA N.A.,

              Defendant.

Civil Case No. 08-0433 (JR)

## DECLARATION OF ERIC B. FASTIFF IN SUPPORT OF
## CITY OF OAKLAND'S RESPONSE TO PLAINTIFFS' OPPOSITION
## TO RELIEF REQUESTED IN MOTION OF CITY OF OAKLAND FOR
## LIMITED PURPOSE INTERVENTION

I, Eric B. Fastiff, declare as follows:

1.      I am a partner of the law firm Lieff, Cabraser, Heimann & Bernstein, LLP and am admitted to practice before this Court.  I am one of the counsel for Plaintiff City of Oakland in *City of Oakland v. AIG Financial Products Corp., et al.*, Case No. 08-cv-2116-MMC, pending in the United States District Court for the Northern District of California.

2.      Oakland's Motion for Intervention for the Limited Purpose of Responding to Plaintiffs' Pending Motion for the Appointment of Interim Co-Lead Counsel was granted in a Minute Order dated May 20, 2008.

3.      Attached hereto as Exhibit A is a true and correct copy of the title page of and excerpt from Bank of America Corporation's Form 10-K, dated February 28, 2008.

4.      Attached hereto as Exhibit B is a true and correct copy of the Department of Justice's Corporate Leniency Policy, available at http://www.usdoj.gov/atr/public/guidelines/0091.htm

5.      Attached hereto as Exhibit C is a true and correct copy of Fairfax County's Memorandum In Support of Motion for Transfer of Related Actions to the District of Columbia Pursuant to 28 U.S.C. § 1407 For Consolidated Pretrial Proceedings, filed with the Judicial Panel on MultiDistrict Litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 29th day of May, at San Francisco, California.

/s/ <em>Eric B. Fastiff</em>
_____

Eric B. Fastiff

EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 10-K

---

### ANNUAL REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

**(Mark One)**

[✓]  ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934

  For the fiscal year ended December 31, 2007

or

[  ]  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934

  For the transition period from          to

**Commission file number:**

1-6523

---

**Exact Name of Registrant as Specified in its Charter:**

# Bank of America Corporation

---

**State or Other Jurisdiction of Incorporation or Organization:**
Delaware

**IRS Employer Identification No.:**
56-0906609

**Address of Principal Executive Offices:**
Bank of America Corporate Center
100 N. Tryon Street
Charlotte, North Carolina 28255

**Registrant's telephone number, including area code:**
(704) 386-5681

SECURITIES REGISTERED PURSUANT TO SECTION 12(b) OF THE ACT:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock | New York Stock Exchange |
|  | London Stock Exchange |
|  | Tokyo Stock Exchange |
| Depositary Shares, Each Representing a 1/1000th interest in a share of 6.204% Non-Cumulative Preferred Stock, Series D | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/1,000th interest in a share of Floating Rate Non-Cumulative Preferred Stock, Series E | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/1,000th interest in a share of 6.625% Non-Cumulative Preferred Stock, Series I | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/1,000th interest in a share of 7.25% Non-Cumulative Preferred Stock, Series J | New York Stock Exchange |
| 7.25% Non-Cumulative Perpetual Convertible Preferred Stock, Series L | New York Stock Exchange |
| Minimum Return Index EAGLESSM, due June 1, 2010, Linked to the +Nasdaq-100 Index® | American Stock Exchange |
| Minimum Return Index EAGLES®, due June 28, 2010, Linked to the S&P 500® Index | American Stock Exchange |
| Minimum Return – Return Linked Notes, due June 24, 2010, Linked to the Nikkei 225 Index | American Stock Exchange |
| Minimum Return Basket EAGLESSM, due August 2, 2010, Linked to a Basket of Energy Stocks | American Stock Exchange |
| Minimum Return Index EAGLES®, due August 28, 2009, Linked to the Russell 2000® Index | American Stock Exchange |
| Minimum Return Index EAGLES®, due September 25, 2009, Linked to the Dow Jones Industrial AverageSM | American Stock Exchange |
| Minimum Return Index EAGLES®, due October 29, 2010, Linked to the Nasdaq-100 Index® | American Stock Exchange |
| 1.50% Index CYCLESTM, due November 26, 2010, Linked to the S&P 500® Index | American Stock Exchange |

bonds that mature at the preset future date. The Corporation is required to fund any shortfall at the preset future date between the proceeds of the liquidated assets and the purchase price of the zero-coupon bonds. These guarantees are booked as derivatives and marked to market in the trading portfolio. At December 31, 2007 and 2006, the notional amount of these guarantees totaled $1.5 billion and $4.0 billion. These guarantees have various maturities ranging from two to five years. At December 31, 2007 and 2006, the Corporation had not made a payment under these products and has assessed the probability of payments under these guarantees as remote.

The Corporation has entered into additional guarantee agreements, including lease end obligation agreements, partial credit guarantees on certain leases, real estate joint venture guarantees, sold risk participation swaps and sold put options that require gross settlement. The maximum potential future payment under these agreements was approximately $4.8 billion and $2.0 billion at December 31, 2007 and 2006. The estimated maturity dates of these obligations are between 2008 and 2033. The Corporation has made no material payments under these guarantees.

For additional information on recourse obligations related to residential mortgage loans sold and other guarantees related to securitizations, see *Note 8 – Securitizations* to the Consolidated Financial Statements.

## Litigation and Regulatory Matters

In the ordinary course of business, the Corporation and its subsidiaries are routinely defendants in or parties to many pending and threatened legal actions and proceedings, including actions brought on behalf of various classes of claimants. Certain of these actions and proceedings are based on alleged violations of consumer protection, securities, environmental, banking, employment and other laws. In certain of these actions and proceedings, claims for substantial monetary damages are asserted against the Corporation and its subsidiaries.

In the ordinary course of business, the Corporation and its subsidiaries are also subject to regulatory examinations, information gathering requests, inquiries and investigations. Certain subsidiaries of the Corporation are registered broker/dealers or investment advisors and are subject to regulation by the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority, the New York Stock Exchange and state securities regulators. In connection with formal and informal inquiries by those agencies, such subsidiaries receive numerous requests, subpoenas and orders for documents, testimony and information in connection with various aspects of their regulated activities.

In view of the inherent difficulty of predicting the outcome of such litigation and regulatory matters, particularly where the claimants seek very large or indeterminate damages or where the matters present novel legal theories or involve a large number of parties, the Corporation cannot state with confidence what the eventual outcome of the pending matters will be, what the timing of the ultimate resolution of these matters will be, or what the eventual loss, fines or penalties related to each pending matter may be.

In accordance with SFAS No. 5, "Accounting for Contingencies", the Corporation establishes reserves for litigation and regulatory matters when those matters present loss contingencies that are both probable and estimable. When loss contingencies are not both probable and estimable, the Corporation does not establish reserves. In some of the matters described below, including but not limited to a substantial portion of the Parmalat Finanziaria S.p.A. matters, loss contingencies are not both probable and estimable in the view of management, and, accordingly, reserves have not been established for those matters. Based on current knowledge, management does not believe that loss contingencies, if any, arising from

pending litigation and regulatory matters, including the litigation and regulatory matters described below, will have a material adverse effect on the consolidated financial position or liquidity of the Corporation, but may be material to the Corporation's operating results for any particular reporting period.

### Adelphia Communications Corporation (ACC)

Adelphia Recovery Trust is the plaintiff in a lawsuit pending in the U.S. District Court for the Southern District of New York. The lawsuit names over 700 defendants, including Bank of America, N.A. (BANA), Banc of America Securities, LLC (BAS), Fleet National Bank, Fleet Securities, Inc. and other affiliated entities, and asserts over 50 claims under federal statutes and state common law. The principal claims include fraudulent transfer, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and equitable disallowance and subordination. These claims relate to loans and other services provided to various affiliates of ACC and entities owned by members of the founding family of ACC. The plaintiffs seek unspecified damages in an amount not less than $5 billion.

### Data Treasury Litigation

The Corporation and BANA have been named as defendants in two cases filed by Data Treasury Corporation (Data Treasury) in the U.S. District Court for the Eastern District of Texas. In one case, Data Treasury alleges that defendants "provided, sold, installed, utilized, and assisted others to use and utilize image-based banking and archival solutions" in a manner that infringes United States Patent Nos. 5,910,988 and 6,032,137. In the other case, Data Treasury alleges that the Corporation and BANA, among other defendants, are "making, using, selling, offering for sale, and/or importing into the United States, directly, contributory, and/or by inducement, without authority, products and services that fall within the scope of the claims of" United States Patent Nos. 5,265,007; 5,583,759; 5,717,868; and 5,930,778. Data Treasury seeks unspecified damages and injunctive relief in both cases.

### In re Initial Public Offering Securities Litigation

Beginning in 2001, Robertson Stephens, Inc. (an investment banking subsidiary of FleetBoston that ceased operations during 2002), BAS, other underwriters, and various issuers and others, were named as defendants in certain of the 309 putative class action lawsuits that have been consolidated in the U.S. District Court for the Southern District of New York as *In re Initial Public Offering Securities Litigation.* Plaintiffs contend that the defendants failed to make certain required disclosures and manipulated prices of securities sold in initial public offerings through, among other things, alleged agreements with institutional investors receiving allocations to purchase additional shares in the aftermarket and seek unspecified damages. On December 5, 2006, the U.S. Court of Appeals for the Second Circuit reversed the District Court's order certifying the proposed classes. On September 27, 2007, plaintiffs filed a motion to certify modified classes, which defendants have opposed. On June 25, 2007, the District Court approved an agreement between plaintiffs and 298 of the issuer defendants terminating their proposed settlement.

### IPO Underwriting Fee Litigation

BAS, Robertson Stephens, Inc., and other underwriters are defendants in putative class action lawsuits captioned *In re Public Offering Fee Antitrust Litigation* and *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* filed in the U.S. District Court for the Southern District of New York in November 1998 and October 2000, respectively, alleging that underwriters conspired to fix the underwriters' discount at 7% of the offering

price in certain initial public offerings (IPOs). The complaints, which have been filed by both purchasers and certain issuers in IPOs, seek treble damages and injunctive relief. On February 24, 2004, the District Court granted defendants' motion to dismiss as to the purchasers' damages claims. On April 18, 2006, the District Court denied class certification with respect to the issuers' damages claims. On September 11, 2007, the U.S. Court of Appeals for the Second Circuit reversed the order denying class certification as to the issuers' damages claims and remanded the case to the District Court for further class certification proceedings.

### Interchange Antitrust Litigation and Visa-Related Litigation

The Corporation and certain of its subsidiaries are defendants in putative class actions filed on behalf of retail merchants that accept Visa and MasterCard payment cards. Additional defendants include Visa, MasterCard, and other financial institutions. Plaintiffs' First Consolidated and Amended Class Action Complaint alleges that the defendants conspired to fix the level of interchange and merchant discount fees and that certain other practices, including various Visa and MasterCard rules, violate federal and California antitrust laws. Plaintiffs also filed a supplemental complaint against certain defendants, including the Corporation and certain of its subsidiaries, alleging federal antitrust claims and a fraudulent conveyance claim arising out of MasterCard's 2006 initial public offering. The putative class plaintiffs seek unspecified treble damages and injunctive relief. The actions are coordinated for pre-trial proceedings in the U.S. District Court for the Eastern District of New York with individual actions brought only against Visa and MasterCard under the caption *In Re Payment Card Interchange Fee and Merchant Discount Anti-Trust Litigation (Interchange)*. On January 8, 2008, the District Court dismissed all claims for pre-2004 damages. A motion to dismiss the supplemental complaint is pending.

The Corporation and certain of its subsidiaries have entered into agreements that provide for sharing liabilities in connection with antitrust litigation against Visa (the Visa-Related Litigation), including *Discover Financial Services. v. Visa U.S.A., et al.*, pending in the U.S. District Court for the Southern District of New York, which alleges that Visa and others unlawfully inhibited competition in the payment card industry, and *Interchange*. The agreements also provide for sharing liabilities in connection with *American Express Travel Related Services Company v. Visa USA, et al.*, which was settled by Visa in November 2007. Under these agreements, the Corporation's obligations to Visa are capped at the Corporation's membership interest of 12.1% in Visa USA. In November 2007, Visa Inc. filed a registration statement with the SEC with respect to a proposed initial public offering (Visa IPO). Subject to market conditions and other factors, Visa Inc. states that it expects the Visa IPO to occur in the first quarter of 2008. The Corporation expects that a portion of the proceeds from the Visa IPO will be used by Visa Inc. to fund liabilities arising from the Visa-Related Litigation.

### Miller

On August 13, 1998, a predecessor of BANA was named as a defendant in a class action filed in Superior Court of California, County of San Francisco, entitled *Paul J. Miller v. Bank of America, N.A.*, challenging its practice of debiting accounts that received, by direct deposit, governmental benefits to repay fees incurred in those accounts. The action alleges, among other claims, fraud, negligent misrepresentation and other violations of California law. On October 16, 2001, a class was certified consisting of more than one million California residents who have, had or will have, at any time after August 13, 1994, a deposit account with BANA into which payments of public benefits are or have been directly deposited by the government.

On March 4, 2005, the trial court entered a judgment that purported to award the class restitution in the amount of $284 million, plus attorneys' fees, and provided that class members whose accounts were assessed an insufficient funds fee in violation of law suffered substantial emotional or economic harm and, therefore, are entitled to an additional $1,000 statutory penalty. The judgment also purported to enjoin BANA, among other things, from engaging in the account balancing practices at issue. On November 22, 2005, the California Court of Appeal stayed the judgment, including the injunction, pending appeal.

On November 20, 2006, the California Court of Appeal reversed the judgment in its entirety, holding that BANA's practice did not constitute a violation of California law. On March 21, 2007, the California Supreme Court granted plaintiff's petition to review the Court of Appeal's decision.

### Municipal Derivatives Matters

The Antitrust Division of the U.S. Department of Justice (DOJ), the SEC, and the IRS are investigating possible anticompetitive bidding practices in the municipal derivatives industry involving various parties, including BANA, from the early 1990s to date. The activities at issue in these industry-wide government investigations concern the bidding process for municipal derivatives that are offered to states, municipalities and other issuers of tax-exempt bonds. The Corporation has cooperated, and continues to cooperate, with the DOJ, the SEC and the IRS. On February 4, 2008, BANA received a Wells notice advising that the SEC staff is considering recommending that the SEC bring a civil injunctive action and/or an administrative proceeding "in connection with the bidding of various financial instruments associated with municipal securities." BANA intends to respond to the notice. An SEC action or proceeding could seek a permanent injunction, disgorgement plus prejudgment interest, civil penalties and other remedial relief.

On January 11, 2007, the Corporation entered into a Corporate Conditional Leniency Letter (the Letter) with DOJ. Under the Letter and subject to the Corporation's continuing cooperation, DOJ will not bring any criminal antitrust prosecution against the Corporation in connection with the matters that the Corporation reported to DOJ. Civil actions may be filed. Subject to satisfying DOJ and the court presiding over any civil litigation of the Corporation's cooperation, the Corporation is eligible for (i) a limit on liability to single, rather than treble, damages in certain types of related civil antitrust actions, and (ii) relief from joint and several antitrust liability with other civil defendants.

### Parmalat Finanziaria S.p.A.

On December 24, 2003, Parmalat Finanziaria S.p.A. was admitted into insolvency proceedings in Italy, known as "extraordinary administration." The Corporation, through certain of its subsidiaries, including BANA, provided financial services and extended credit to Parmalat and its related entities. On June 21, 2004, Extraordinary Commissioner Dr. Enrico Bondi filed with the Italian Ministry of Production Activities a plan of reorganization for the restructuring of the companies of the Parmalat group that are included in the Italian extraordinary administration proceeding.

In July 2004, the Italian Ministry of Production Activities approved the Extraordinary Commissioner's restructuring plan, as amended, for the Parmalat group companies that are included in the Italian extraordinary administration proceeding. This plan was approved by the voting creditors and the Court of Parma, Italy in October of 2005.

Litigation and investigations relating to Parmalat are pending in both Italy and the United States, and the Corporation is responding to inquiries concerning Parmalat from regulatory and law enforcement authorities in Italy and the United States.

EXHIBIT B

 # Department of Justice

---

## CORPORATE LENIENCY POLICY

The Division has a policy of according leniency to corporations reporting their illegal antitrust activity at an early stage, if they meet certain conditions.  "Leniency" means not charging such a firm criminally for the activity being reported.  (The policy also is known as the corporate amnesty or corporate immunity policy.)

A.  **Leniency Before an Investigation Has Begun**

Leniency will be granted to a corporation reporting illegal activity before an investigation has begun, if the following six conditions are met:

    1.  At the time the corporation comes forward to report the illegal activity, the Division has not received information about the illegal activity being reported from any other source;

    2.  The corporation, upon its discovery of the illegal activity being reported, took prompt and effective action to terminate its part in the activity;

3.  The corporation reports the wrongdoing with candor and completeness and provides full, continuing and complete cooperation to the Division throughout the investigation;

4.  The confession of wrongdoing is truly a corporate act, as opposed to isolated confessions of individual executives or officials;

5.  Where possible, the corporation makes restitution to injured parties; and

6.  The corporation did not coerce another party to participate in the illegal activity and clearly was not the leader in, or originator of, the activity.

B.  **<u>Alternative Requirements for Leniency</u>**

If a corporation comes forward to report illegal antitrust activity and does not meet all six of the conditions set out in Part A, above, the corporation, whether it comes forward before or after an investigation has begun, will be granted leniency if the following seven conditions are met:

1.  The corporation is the first one to come forward and qualify for leniency with respect to the illegal activity being reported;

2.  The Division, at the time the corporation comes in, does not yet have evidence against the company that is likely to result in a sustainable conviction;

3.  The corporation, upon its discovery of the illegal activity being reported, took prompt and effective action to terminate its part in the activity;

4.  The corporation reports the wrongdoing with candor and completeness and provides full, continuing and complete cooperation that advances the Division in its investigation;

5.  The confession of wrongdoing is truly a corporate act, as opposed to isolated confessions of individual executives or officials;

6.  Where possible, the corporation makes restitution to injured parties; and

7.  The Division determines that granting leniency would not be unfair to others, considering the nature of the illegal activity, the confessing corporation's role in it, and when the corporation comes forward.

In applying condition 7, the primary considerations will be how early the corporation comes forward and whether the corporation coerced another party to participate in the illegal activity or clearly was the leader in, or originator of, the activity.  The burden of satisfying condition 7 will be low if the corporation comes forward before the Division has begun an investigation into the illegal activity.  That burden will increase the closer the Division comes to having evidence that is likely to result in a sustainable conviction.

3

C.    **Leniency for Corporate Directors, Officers, and Employees**

If a corporation qualifies for leniency under Part A, above, all directors, officers, and employees of the corporation who admit their involvement in the illegal antitrust activity as part of the corporate confession will receive leniency, in the form of not being charged criminally for the illegal activity, if they admit their wrongdoing with candor and completeness and continue to assist the Division throughout the investigation.

If a corporation does not qualify for leniency under Part A, above, the directors, officers, and employees who come forward with the corporation will be considered for immunity from criminal prosecution on the same basis as if they had approached the Division individually.

D.    **Leniency Procedure**

If the staff that receives the request for leniency believes the corporation qualifies for and should be accorded leniency, it should forward a favorable recommendation to the Office of Operations, setting forth the reasons why leniency should be granted.  Staff should not delay making such a recommendation until a fact memo recommending prosecution of others is prepared. The Director of Operations will review the request and forward it to the Assistant Attorney General for final decision.  If the staff recommends against leniency, corporate counsel may wish to seek an appointment with the Director of Operations to make their

4

views known.  Counsel are not entitled to such a meeting as a matter of right, but the opportunity will generally be afforded.

Issued August 10, 1993

EXHIBIT C

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 9 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| ) | **MDL No.** |
| ) | |
| **IN RE MUNICIPAL DERIVATIVES** ) | |
| **ANTITRUST LITIGATION** ) | |
| ) | |
| ) | |

**PLAINTIFF FAIRFAX COUNTY, VIRGINIA'S MEMORANDUM IN SUPPORT OF
MOTION FOR TRANSFER OF RELATED ACTIONS TO THE DISTRICT OF
COLUMBIA PURSUANT TO 28 U.S.C. §1407 FOR CONSOLIDATED PRETRIAL
PROCEEDINGS**

### I.    INTRODUCTION

This Panel should consolidate all antitrust litigation alleging a conspiracy to fix,

maintain, and/or stabilize the interest rates provided on municipal derivatives purchased by

state and local municipalities throughout the United States in the United States District Court

for the District of Columbia.  Two class action lawsuits alleging such a conspiracy were filed

in the District of Columbia on March 12, 2008, and another was filed in the Southern District

of New York on March 13, 2008.  All three actions arise out of a common nucleus of

operative facts and contain substantially similar factual allegations.

The Panel should consolidate these related actions in the District of

Columbia under 28 U.S.C. § 1407 for the following reasons: (1) the actions involve

numerous common questions of fact; (2) consolidation of the actions will be convenient for

the parties and witnesses; and (3) consolidation of the actions will promote the just and efficient conduct of the litigation.

## II.    STATEMENT OF FACTS

States, counties, and cities, or their agencies (collectively "issuers") issue municipal bonds to fund large public projects, such as roads, buildings, mass transit, water treatment plants, and power plants. Because the bond proceeds are often spent over a project's life span, unpent funds are generally placed in secure investment vehicles—known as municipal derivatives—to earn interest until they are needed. Municipal derivatives are provided by highly rated insurance companies and large commercial and investment banks (the "providers"). Municipalities that wish to purchase municipal derivatives typically engage a broker to conduct an auction that complies with Internal Revenue Service ("IRS") rules and regulations. The IRS requires, among other things, that the broker obtain at least three bona fide and commercially reasonable bids for a municipality's municipal derivatives business and that the providers involved in the auction not communicate with each other about the terms of their bids.

The IRS was the first agency to launch an investigation into potential wrong-doing in the municipal derivatives industry. Its inquiry initially focused on dozens of municipal bond deals where the providers employed abusive arbitrage devices that artificially lowered, or "burned," investment yields below the bond yield. The spread between the investment and bond yields was then passed to the provider, rather than the municipality and/or rebated to the IRS as required by the federal tax laws. During the course of the IRS investigation, Bank of America learned that one or more of its employees had engaged in bid-rigging with other providers of municipal derivatives and sought amnesty with the Department of Justice ("DOJ") in exchange for full cooperation with the DOJ's criminal investigation.

The Federal Bureau of Investigation ("FBI") raided the offices of and seized documents from brokers CDR, IMAGE, and Sound Capital in November 2006.

Approximately two dozen additional brokers and providers were separately served with subpoenas. A few weeks later, prosecutors based out of the Antitrust Division's New York field office brought their case to a federal grand jury. As a result, at least ten current or former brokers at major Wall Street and other firms have been targeted for possible indictment by the DOJ.

Together with other governmental entities, moving party Fairfax County has filed an antitrust action in the District of Columbia on behalf of itself and all other similarly situated purchasers of municipal derivatives against 36 named defendants in *Fairfax County, Virginia et al. v. Wachovia Bank, N.A. et al.*, D.D.C. Case No. 1:08-cv-00432 (EGS). These claimants have also filed a related class action, titled *Fairfax County, Virginia et al. v. Bank of America N.A.*, D.D.C. Case No. 1:08-cv-00433 (TFH), solely against Bank of America, N.A ("Bank of America") because their counsel and Defendant Bank of America have held extended discussions concerning the facts and circumstances of the litigation and have agreed upon a framework to begin the process of resolving the litigation against Bank of America. A third case has been filed in the Southern District of New York by Hinds County, Mississippi titled *Hinds County, Mississippi v. Wachovia Bank, N.A.*, S.D.N.Y. Case No. 08-cv-2516 (RMB). All of these class actions seek to remedy harm inflicted upon municipalities by virtue of the bid-rigging of municipal derivatives engaged in by providers and brokers. Given the large number of municipalities affected by the anticompetitive conduct alleged in these actions, Fairfax County believes additional similar cases are likely to be filed in the coming weeks.

### III.    ARGUMENT

#### A.    Transfer of the Municipal Derivatives Antitrust Lawsuits for Coordination and Consolidation is Appropriate Under 28 U.S.C. §1407

Section 1407(a) authorizes the transfer of civil actions in different federal district courts involving common questions of fact to a single federal district court for coordinated or consolidated pretrial proceedings. The purpose of such transfers is to serve the convenience

of the parties and witnesses and to promote just and efficient litigation. 28 U.S.C. § 1407.

Section 1407(a) provides in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the Judicial Panel on Multidistrict Litigation authorized by this Section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

Here, the Panel should consolidate these cases in a single district because: (1) the actions involve numerous common questions of fact; (2) consolidation will be more convenient for the parties and witnesses; and (3) consolidation will promote the just and efficient conduct of the actions.

### 1.    These Actions Involve Multiple Common Questions of Fact

As a general rule, common questions are presumed "when two or more complaints assert comparable allegations against identical defendants based on similar transactions and events." *In re Air West, Inc. Securities Litig.*, 506 F. Supp. 609, 611 (JPML 1974); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 654-55 (JPML 1981).  The related action pending in the Southern District of New York alleges essentially the same unlawful, price-fixing conspiracy by the same defendants during essentially the same period of time based on the same underlying facts as the two earlier filed District of Columbia actions.  The related actions are therefore appropriate for a § 1407 transfer.

Discovery with respect to the Related Actions will involve the same oral testimony and documentary evidence relating to the same alleged conspiracy.  Accordingly, the coordination or consolidation of these Related Actions would avoid duplicative, redundant and costly discovery proceedings, including repetitive motion practice and potentially conflicting discovery and other pretrial rulings.  *See In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (JPML 1995); *see also In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F. Supp. 969, 974 (JPML 1978).

These cases arise out of the same nucleus of operative facts and share multiple common questions of fact. Specifically, each of these cases asserts that providers and brokers of municipal derivatives conspired to artificially fix, maintain, raise, and stabilize the interest rates provided on municipal derivatives. The common questions of fact in these cases include but are not limited to:

      a.     Whether providers and brokers of municipal derivatives and their co-conspirators engaged in a combination and conspiracy among themselves to fix, maintain or stabilize prices, and rig bids and allocate customers and markets of these products;

      b.     The identity of the participants of the alleged conspiracy;

      c.     The duration of the alleged conspiracy and the acts carried out by providers and brokers and their co-conspirators in furtherance of the conspiracy;

      d.     Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

      e.     Whether the conduct of the providers and brokers and their co-conspirators, as alleged in the complaints, caused injury to the business or property of the members of the Class;

      f.     The effect of the alleged conspiracy on the prices of municipal derivatives sold in the United States during the Class Period;

      g.     Whether providers and brokers and their co-conspirators fraudulently concealed the conspiracy's existence from the members of the Class; and

      h.     The appropriate class-wide measure of damages.

These common issues of fact give the Judicial Panel the authority to order the transfer, consolidation and coordination of these actions to a single judicial district. *See e.g., In re Cement and Concrete Antitrust Litig.*, 437 F. Supp. 750, 752  (JPML 1977)

(ordering transfer and consolidation of cases upon a finding of common questions of fact concerning the existence and scope of an antitrust conspiracy).

    **2.**    **Consolidation in a Single Judicial District Will Serve the Convenience the Parties and Witnesses**

Without transfer and consolidation of these cases, the District of Columbia and the Southern District of New York—as well as any other districts in which related actions are filed—will each have to make duplicative inquiries into a substantially similar set of facts involving substantially similar parties and witnesses. These overlapping factual inquiries will undoubtedly inconvenience the parties and the witnesses, as they will be forced to make multiple appearances in both the District of Columbia and the Southern District of New York to resolve the same issues. Maintaining the actions in multiple districts is also likely to confuse the parties and witnesses who may be subjected to multiple rulings and protocols regarding the same factual and legal issues. Under these circumstances, coordination and consolidation of these cases into a single judicial district will convenience the parties by: (1) streamlining discovery; (2) preventing duplicative discovery requests and depositions; (3) preventing duplicative court appearances; and (4) sparing the parties and witnesses the expense and inconvenience of participating in litigation in multiple locations.

    **3.**    **Consolidation Will Promote the Just and Efficient Conduct of the Related Cases**

For the reasons stated above, consolidation will promote the just and efficient conduct of these cases by preventing multiple judicial inquiries into a common set of underlying facts. This will in turn promote efficiency by sparing the judiciary, the parties, and witnesses the burden of expending valuable time and resources conducting duplicative discovery and resolving common questions of fact. Furthermore, consolidation of the actions in a single district is also in the interest of justice because it will prevent the possibility of multiple inconsistent rulings on the common factual and legal issues in the related cases.

**B.     These Actions Should be Consolidated in the District of Columbia**

In choosing the district that should host the consolidated action, the Panel considers which judicial district is best suited to promote the purpose of 28 U.S.C. §1407 in ensuring convenience of the parties and the just and efficient conduct of the litigation.

Each of these considerations favors transfer of these cases to the District of Columbia because: (1) it is a convenient meeting point for parties located in the mid-Atlantic region and along the Eastern Seaboard as well as the international defendants located in Europe and Bermuda, see *In re Publication Paper Antitrust Litig.*, MDL No. 1631, 346 F. Supp. 2d 1370, 1372 (JPML 2004) ("*Publication Paper*") (centrally located district is a factor to consider); (2) it has the judicial resources and expertise to efficiently and judiciously conduct this antitrust litigation; (3) it is the location of the first-filed action, see *In re Methyl Methacrylate (MMA) Antitrust Litig.*, MDL No. 1768, 435 F. Supp. 2d 1345, 1347 (JPML 2006) (location of first-filed action is a factor); and (4) it has the largest number of pending actions and is the location preferred by 7 of 8 named plaintiffs in the three actions presently on file. *See Publication Paper*, 346 F.Supp.2d at 1372 (venue with largest number of pending cases and support of majority of plaintiffs are factors to consider).

The location of relevant trade associations also supports centralization in the District of Columbia. *See In re Rail Fuel Surcharge Antitrust Litig.*, 528 F. Supp. 2d 1358, 1358 (JPML 2007) (transferring actions to the District of Columbia and noting that the "American Association of Railroads is located in this District and may be a source of discovery."). Numerous trade associations that may be sources of discovery maintain offices in the District of Columbia, including for example, the International Swaps & Derivatives Association ("ISDA"). The ISDA describes itself as being the largest global financial trade association, and its members "include most of the world's major institutions that deal in privately negotiated derivatives, as well as many of the businesses, governmental entities and other end users that rely on over-the-counter derivatives . . ." *See*

http://www.isda.org.  Specifically, the ISDA's members include the following Defendants or affiliated entities:  Bank of America, N.A.; J.P. Morgan Chase & Co.; The Bear Stearns Companies, Inc.; Societe Generale; UBS AG; and Wachovia Corporation.  Similarly, the American Bankers Association is headquartered in Washington D.C., and it counts among its members various Defendants, *i.e.*, Bank of America, Morgan Keegan, J.P. Morgan, UBS, and Wachovia.  *See generally* http://www.aba.com.  Moreover, the Municipal Securities Rulemaking Board ("MSRB") is in close proximity to the District of Columbia in Alexandria Virginia.  The MSRB "make rules regulating dealers who deal in municipal bonds, municipal notes, and other municipal securities." *See* http://www.msrb.org.

Furthermore, caseload considerations suggest that the District of Columbia may be better situated to move this litigation toward a conclusion than the other likely candidate, the Southern District of New York.  The Southern District of New York's caseload has increased 32.4% during the 12 month period ending March 31, 2007, whereas the caseload in the District of Columbia has declined 11.2% over the same period. *See* http://www.uscourts.gov/caseload2007/tables/C00Mar07.pdf.  Moreover, the District of Columbia presently has 10 pending multidistrict litigations on its docket, whereas the Southern District of New York has 45. *See* http://www.jpml.uscourts.gov/General_Info/Statistics/Statistical-Analysis-2007.pdf.

Finally, both of the judges assigned to hear the Municipal Derivatives cases in the United States District Court for the District of Columbia, the Honorable Emmet G. Sullivan and the Honorable Thomas F. Hogan are excellent jurists and have previously handled complex antitrust matters.  Judge Hogan has successfully overseen *In Re Vitamin Antitrust Litigation*, MDL 1285, as well as several other multidistrict litigations.  Judge Sullivan also has substantial experience handling antitrust matters, including two high profile matters in the telecommunications field, *U.S. v. SBC Communications, Inc. et al.*, D.D.C. Case No. 05-2103 and *U.S. v. AT&T Corp. et al.*, D.D.C. Case No. 98-cv-3170.  Judge Sullivan has also

overseen several cases involving Taxol, including antitrust claims asserted by a number of state entities. *See State of Ohio, et al. v. Bristol-Myers Squibb, Co.*, D.D.C. Case No. 1:02-cv-01080 and *Vista Healthplan, Inc. et al. v. Bristol-Myers Squibb Co., et al.*, D.D.C. Case No. 1:01-cv-01295. Either of these judges would be an excellent choice to oversee the *Municipal Derivatives* litigation

## IV.    CONCLUSION

For these reasons, Fairfax County respectfully requests that the Panel order the consolidation of these related antitrust class actions in the District of Columbia.

Dated: March 13, 2008

By: _Mich D. H /a_____

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Telephone:     (202) 237-2727
Facsimile:     (202) 237-6131

Jonathan W. Cuneo
Daniel M. Cohen
CUNEO GILBERT & LADUCA, LLP
507 C Street NE
Washington, D.C. 20002
Telephone:     (202) 789-3960
Facsimile:     (202) 789-1813

Joel Davidow
Clifford K. Williams
KILE GOEKJIAN REED & McMANUS
PLLC
1200 New Hampshire Avenue, NW
Suite 570
Washington, DC 20036
Telephone:     (202) 659-8000
Facsimile:     (202) 659-8822

Allen Black
Roberta Liebenberg
Donald Perelman
FINE KAPLAN & BLACK, RPC
1835 Market Street
28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Facsimile:  (215) 568-5872

Samuel D. Heins
Vincent J. Esades
HEINS MILLS & OLSON
310 Clifton Avenue
Minneapolis, MN 55403
Telephone:     (612) 338-4605
Facsimile:     (612) 338-4692

Michael D. Hausfeld
Richard A. Koffman
Christopher J. Cormier
COHEN, MILSTEIN, HAUSFELD &
TOLL P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone:     (202) 408-4600
Facsimile:     (202) 408-4699

Michael P. Lehmann
Christopher L. Lebsock
Jon T. King
COHEN, MILSTEIN, HAUSFELD &
TOLL P.L.L.C.
One Embarcadero Plaza
San Francisco, CA 94111
Telephone:     (415) 229-2080
Facsimile:     (415) 986-3643

Robert G. Eisler
COHEN, MILSTEIN, HAUSFELD &
TOLL P.L.L.C.
150 East 52nd Street
Thirtieth Floor
New York, NY 10022
Telephone:     (212) 838-7797
Facsimile:     (212) 838-7745

Carol V. Gilden
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Telephone:     (312) 357-0370
Facsimile:     (312) 357-0369

Arthur N. Bailey
ARTHUR N. BAILEY & ASSOCIATES
111 West Second Street, Suite 4500
Jamestown, NY 14701
Telephone:     (716) 664-2967
Facsimile:     (716) 664-2983

Allan Steyer
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Third Floor
San Francisco, CA 94111
Telephone:    (415) 421-3400
Facsimile:    (415) 421-2234

Steven Greenfogel
MEREDITH COHEN GREENFOGEL &
SKIRNICK, P.C.
1521 Locust St., 8th Floor
Philadelphia, PA 19102
Telephone:  (215) 564-5182
Facsimile:   (215) 569-0958

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia , Pennsylvania 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Armand Derfner
DERFNER ALTMAN & WILBORN
40 Calhoun Street, Suite 410
P.O. Box 600
Charleston, SC 29401
Telephone: (843) 723-9804
Facsimile:  (843) 723-7446

Steven A. Kanner
FREED KANNER LONDON &
 MILLEN LLC
2201 Waukegan Rd.,
Suite 130
Bannockburn, IL 60015
Telephone:  (224) 224-632-4500
Facsimile:   (224) 632-4521

Brent Hazzard
HAZZARD LAW, LLC
6360 I 55 N
Suite 340
Jackson, MS  39211
Telephone:  (601) 977-5253
Facsimile:   (601) 977-5236

Joe R. Whatley Jr.
WHATLEY DRAKE & KALLAS LLC
2001 Park Place North
Suite 1000
Birmingham, Alabama  35203
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

Stephen Neuwirth
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for One or More Individual
Plaintiffs

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAR 1 9 2008

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>)<br>) |

MDL Docket No. _____

## PLAINTIFF FAIRFAX COUNTY, VIRGINIA'S SCHEDULE OF ACTIONS

| Action | Case Captions | Court | Civil Action No. | Assigned Judge | Date Filed |
|---|---|---|---|---|---|
| 1. | **Plaintiffs:**<br><br>FAIRFAX COUNTY, VIRGINIA; STATE OF MISSISSIPPI; CITY OF CHICAGO, ILLINOIS; CITY OF FALL RIVER, MASSACHUSETTS; CHARLESTON COUNTY SCHOOL DISTRICT, SOUTH CAROLINA; BERKELEY COUNTY, SOUTH CAROLINA; and ALABAMA STATE UNIVERSITY, on behalf of themselves and all other similarly situated entities.<br><br>**Defendants:**<br><br>BANK OF AMERICA, N.A. | D.C. | 1:08-cv-00433 (TFH) | Hon. Thomas F. Hogan | March 12, 2008 |

IMANAGE 356967.1 21480001

| Action | Case Captions | Court | Civil Action No. | Assigned Judge | Date Filed |
|---|---|---|---|---|---|
| | | | | | |
| 2. | FAIRFAX COUNTY, VIRGINIA; STATE OF MISSISSIPPI; CITY OF CHICAGO, ILLINOIS; CITY OF FALL RIVER, MASSACHUSETTS; CHARLESTON COUNTY SCHOOL DISTRICT, SOUTH CAROLINA; BERKELEY COUNTY, SOUTH CAROLINA; and ALABAMA STATE UNIVERSITY, on behalf of themselves and all other similarly situated entities.<br><br>**Defendants:**<br><br>WACHOVIA BANK N.A..; AIG FINANCIAL PRODUCTS CORP.; BEAR, STEARNS & CO., INC.; FINANCIAL SECURITY ASSURANCE HOLDINGS, LTD.; FINANCIAL SECURITY ASSURANCE, INC.; FINANCIAL GUARANTY INSURANCE COMPANY; TRINITY FUNDING CO., LLC; GE FUNDING CAPITAL MARKET SERVICES, INC.; GENWORTH FINANCIAL INC.; NATIXIS S.A.; JP MORGAN CHASE & CO.; PIPER JAFFRAY & CO.; SOCIÉTÉ GÉNÉRALE SA; AIG SUNAMERICA LIFE ASSURANCE CO.; UBS AG; SECURITY CAPITAL ASSURANCE INC.; XL ASSET FUNDING, LLC; XL LIFE INSURANCE & ANNUITY COMPANY; LEHMAN BROTHERS INC. | D.C. | 1:08-cv-00432 (EGS) | Hon. Emmet G. Sullivan | March 12, 2008 |

| Action | Case Captions | Court | Civil Action No. | Assigned Judge | Date Filed |
|---|---|---|---|---|---|
| | MERRILL LYNCH & CO., INC.; MORGAN STANLEY; NATIONAL WESTMINSTER BANK PLC; NATIXIS FUNDING CORP.; INVESTMENT MANAGEMENT ADVISORY GROUP, INC.; CDR FINANCIAL PRODUCTS; FELD WINTERS FINANCIAL LLC; WINTERS & CO. ADVISORS, LLC; FIRST SOUTHWEST COMPANY; GEORGE K. BAUM & CO.; KINSELL NEWCOMB & DE DIOS INC.; PACKERKISS SECURITIES, INC.; SHOCKLEY FINANCIAL CORP.; SOUND CAPITAL MANAGEMENT, INC.; CAIN BROTHERS & CO., LLC; MORGAN KEEGAN & CO., INC.; and MGIC | | | | |
| 3. | **Plaintiff:** HINDS COUNTY, MISSISSIPPI **Defendants:** WACHOVIA BANK N.A..; AIG FINANCIAL PRODUCTS CORP.; BEAR, STEARNS & CO., INC.; FINANCIAL SECURITY ASSURANCE HOLDINGS, LTD.; FINANCIAL SECURITY ASSURANCE, INC.; FINANCIAL GUARANTY INSURANCE COMPANY; TRINITY FUNDING CO., LLC; GE FUNDING CAPITAL MARKET SERVICES, INC.; GENWORTH FINANCIAL | S.D.N.Y. | 08-CV-2516 (RMB) | Hon. Richard M. Berman | March 13, 2008 |

| Action | Case Captions | Court | Civil Action No. | Assigned Judge | Date Filed |
|--------|---------------|-------|------------------|----------------|------------|
|  | INC.; NATIXIS S.A.; JP MORGAN CHASE & CO.; PIPER JAFFRAY & CO.; SOCIÉTÉ GÉNÉRALE SA; AIG SUNAMERICA LIFE ASSURANCE CO.; UBS AG; SECURITY CAPITAL ASSURANCE INC.; XL ASSET FUNDING, LLC; XL LIFE INSURANCE & ANNUITY COMPANY; LEHMAN BROTHERS INC.; MERRILL LYNCH & CO., INC.; MORGAN STANLEY; NATIONAL WESTMINSTER BANK PLC; NATIXIS FUNDING CORP.; INVESTMENT MANAGEMENT ADVISORY GROUP, INC.; CDR FINANCIAL PRODUCTS; FELD WINTERS FINANCIAL LLC; WINTERS & CO. ADVISORS, LLC; FIRST SOUTHWEST COMPANY; GEORGE K. BAUM & CO.; KINSELL NEWCOMB & DE DIOS INC.; PACKERKISS SECURITIES, INC.; SHOCKLEY FINANCIAL CORP.; SOUND CAPITAL MANAGEMENT, INC.; CAIN BROTHERS & CO., LLC; MORGAN KEEGAN & CO., INC.; MGIC; and BANK OF AMERICA N.A. |  |  |  |  |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Response to

Plaintiffs' Opposition to Relief Requested in Motion of City of Oakland for Limited Purpose

Intervention, Declaration of Eric B. Fastiff and exhibits, and this Certificate of Service, were

served via email to the Court and upon all counsel registered for ECF and via first-class mail on

the following counsel and parties:

Joel Davidow
Clifford K. Williams
KILE GOEKJIAN REED & McMANUS PLLC
1200 New Hampshire Avenue, N.W., Suite 570
Washington, DC 20036

Allen Black
Roberta Liebenberg
Donald Perelman
FINE KAPLAN & BLACK, RPC
1835 Market Street, 28th Floor
Philadelphia, PA 19103

Samuel D. Heins
Vincent J. Esades
HEINS MILLS & OLSON
310 Clifton Avenue
Minneapolis, MN 55403

Allan Steyer
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Third Floor
San Francisco, CA 94111

Steven Greenfogel
MEREDITH COHEN GREENFOGEL &
SKIRNICK, P.C.
1521 Locust St., 8th Floor
Philadelphia, PA 19102

Brian K. Herrington
BRENT COON & ASSOCIATES
6360 I-55 North
Suite 340
Jackson, MS 39211

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697

Armand Derfaer
DERFNER ALTMAN & WILBORN
40 Calhoun Street, Suite 410
P.O. Box 600
Charleston, SC 29401

Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Rd., Suite 130
Bannockburn, IL 60015

Brent Hazzard
HAZZARD LAW, LLC
6360 I 55 N
Suite 340
Jackson, MS 39211

Precious Martin Senior
PRECIOUS MARTIN SENIOR &
ASSOCIATES PLLC
821 North Congress St.
P.O. Box 373
Jackson, MS 39205-0373

Paul Bennett
Steven Sidener
Andrew Dirksen
GOLD BENNETT CERA & SIDENER LLP
595 Market St., Suite 2300
San Francisco, CA 94105

Gerald J. Rodos
Jeffrey B. Gittleman
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market St.
Philadelphia, PA 19103

Michael M. Buchman
POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP
100 Park Avenue
New York, NY 10017

-2-

Roland G. Riopelle
SERCARZ & RIOPELLE LLP
152 West 57th Street
Suite 24C
New York, NY 10019

Piper Jaffray & Co.
800 Nicollet Mall
Suite 800
Minneapolis, MN  55402-7020

Cain Brothers & Co., LLC
360 Madison Avenue
5th Floor
New York, NY  10017

Financial Guaranty Insurance Co.
125 Park Avenue
New York, NY  10017

Packerkiss Securities, Inc.
Fifteen North East Fourth Street
Suite A
Delray Beach, FL  33444

Kinsell Newcomb & De Dios Inc.
2776 Gateway Road
Carlsbad, CA  92009

George K. Baum & Co.
4801 Main Street
Suite 500
Kansas City, MO  64112
Feld Winters Financial LLC
15260 Ventura Blvd.
Suit 2220
Sherman Oaks, CA  91403

GE Funding Capital Market Services, Inc.
335 Madison Avenue, 11th Floor
New York, NY  10017

Security Capital Assurance, Inc.
A.S. Cooper Building
26 Reid Street
4th Floor
Hamiton, HM 11, Bermuda

Merrill Lynch & Co.
4 World Financial Center
250 Vesey Street
New York, NY  10080

National Westminster Bank PLC
135 Bishopsgate
London
EC2M3 UR, England

Investment Management
Advisory Group, Inc.
886 Vaughn Road
Pottstown, PA  19465


Date:  May 29, 2008                    _____/s/ *Eric B. Fastiff*_____
                                       Eric B. Fastiff